| | | |
|---|---|---|
| ESTATE OF JARED PEELE, | ) | |
| *by and through* ADMINISTRATOR | ) | |
| PATRICIA PEELE; AND PATRICIA PEELE, | ) | |
| INDIVIDUALLY | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Civil Action No |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | |
| | ) | |
| *Defendant.* | ) | |

## COMPLAINT

COME NOW, the Plaintiffs, the Estate of Jared Peele, by and through its Administrator Patricia Peele; and Patricia Peele, individually (hereinafter "Plaintiffs"), by and through their attorney, and for their Complaint against the United States of America (hereinafter "Defendant"), state as follows:

## INTRODUCTION

1. This lawsuit concerns the substandard medical care provided by agents, servants, and employees of the United States Government at Rural Health Group at Halifax Regional Medical Center (hereinafter "RHG") to decedent Jared Peele ("Mr. Peele"), between on or about September 27, 2022 through and including November 10, 2022 when Mr. Peele sought medical evaluation, testing and / or treatment for fainting, pain in his chest, shortness of breath and swollen legs from Dr. Timothy Cox, a physician at RHG. On November 9, 2022, Mr. Peele presented to Dr. Cox with shortness of breath, pain in his chest and swollen legs. Later that night or early morning of November 10, Mr. Peele dropped dead in his mother's home. The medical treatment provided to Mr. Peele failed

1

to meet the standard of care appropriate for Mr. Peele with his medical history and symptoms.

**JURISDICTION AND VENUE**

2. Plaintiffs incorporated paragraphs 1 as if fully set forth herein.

3. Plaintiffs bring this lawsuit pursuant to the Federal Tort Claims Act, 28 U.S.C. § 134(b), 2671 et seq. ("FTCA") based on the negligent acts and omissions of Defendant's employees or agents as set forth in this Complaint.

4. Pursuant to the provisions of the FTCA, Plaintiffs filed administrative claims for personal injury, wrongful death, negligent infliction of emotional distress and loss of consortium against the Defendant within the statutory period as required by law for each individual Plaintiff, to include Mr. Peele's estate. These claims were denied by the United States Department of Health and Human Services on July 8, 2024, asserting that the notice was a final determination of the administrative tort claim as required by 28 U.S.C. § 2401(b), 2675(a). Plaintiffs' lawsuit following the statutory period for agency review is timely. This Court has jurisdiction over Plaintiffs' lawsuit pursuant to U.S.C. § 1331, as this action raises federal questions under 28 U.S.C. § 1346.

**VENUE**

5. Venue is proper in the United States District Court for the Eastern District of North Carolina, pursuant to 18 U.S.C. § 1391(b) because Defendant's primary office is located in and the events giving rise to the claims herein occurred in Roanoke Rapids, North Carolina, which is in the Southern Division for the United States District Court for the Eastern District of North Carolina.

2

6. Injuries suffered by Plaintiffs occurred in the city of Roanoke Rapids, North Carolina. Decedent, Mr. Peele died in Roanoke Rapids, North Carolina, due to the negligence of Defendant's employees, agents and / or representatives as set forth in this lawsuit.

## PARTIES

7. Plaintiffs incorporated paragraphs 1 through 6 as if fully set forth herein.

8. At all times relevant herein, Mr. Peele resided in the city of Roanoke Rapids, North Carolina, when the events giving rise to this lawsuit occurred.

9. Mr. Peele was treated at Rural Health Group at Halifax Regional Medical Center and passed away on November 10, 2022.

10. Plaintiff Patricia Peele is the mother of Jared Peele and is also the duly appointed Administrator of the Estate of Jared Peele under the provisions of North Carolina General Statute 28A-6-1; 28A-6-3; 28A-11-1; 36C-2-209.

11. At all times relevant herein, Defendant United States of America operated the healthcare facility Rural Health Group at Halifax Regional Medical Center and provided healthcare services including but not limited to medical, surgical, and hospital care and treatment.

12. At all times relevant herein, Defendant United States of America represented itself to Plaintiffs as medical facilities and medical providers that had and possessed the requisite skill, competence, facilities, and personnel to properly care for and treat Decedent Peele, while he was alive, upon which representations he and his heirs relied.

13. At all times relevant herein, the Defendant provided personnel, including doctors and others, for the care and treatment of patients including Decedent Peele.

3

14. At all times relevant herein, Defendant's employees, agents, and representatives including but not limited to physician Dr, Timothy Cox who injured the Plaintiffs through their negligent acts and omissions, were employed by Defendant and were acting in the course and scope of their employment throughout the period of their treatment of Decedent Peele.

15. Defendant, United States of America, is subject to this suit for injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff, pursuant to the FTCA, so detailed in this cause of action.

## FACTUAL ALLEGATIONS

16. Plaintiffs incorporated paragraphs 1 through 15 as if fully set forth herein.

17. On September 25, 2022, Jared Peele was at a park with his 4-H group and lost consciousness. He was transported by EMS to ECU North Hospital, also known as Vidant Hospital. There he was evaluated and instructed to follow up with his primary care physician.

18. On September 27, 2022, Mr. Peele had an appointment at Rural Health Group at Halifax Regional Medical Center (RHG) with Dr. Timothy Cox, a family specialist. Reciting his medical history, Jared stated that he suffered from protein C deficiency and previously had deep vein thrombosis (DVT), a blood clot in his right leg. He also informed Dr. Cox that his father also had protein C deficiency and had died from DVT. No testing was done at this time for DVT. Dr. Cox told Jared to follow up in three months.

19. Then on November 9, 2022, Jared went back to see Dr. Cox seeking medical attention for chest pains, shortness of breath, dizziness, heart palpitations, fatigue, and swelling in his

4

legs. Jared told Dr. Cox that for the last week he had been suffering from shortness of breath and intermittent burning in the center of his chest. Also, he was experiencing intermittent dizzy spells which worsened when he was active or standing up. Jared stated that these symptoms made him afraid to drive and afraid of being alone.

20. At that appointment, Jared's mother, Patricia Peele, was present and reminded Dr. Cox that Jared suffered from protein C deficiency. Mrs. Peele also showed Dr. Cox that Jared's leg was swollen. Dr. Cox. stated that Jared Peele was fine and sent him home. He advised Jared that if the symptoms worsened to go to the emergency room.

21. Even though Dr. Cox sent Jared home, Dr. Cox opined in Jared's November 9th medical records that he was concerned for possible acute PE ("pulmonary embolism"). Dr. Cox did not direct Mr. Peele to go to hospital, which was literally within walking distance of his office, for an ultra sound and / or a chest x-ray. Dr. Cox did nothing to rule out this deadly condition.

22. Dr. Cox knew or should have known that PE was a deadly condition if left untreated; he knew or should have known that Jared Peele previously had DVT in his right leg; he knew or should have known that Jared Peele had protein C deficiency; and Dr. Cox knew or should have known that Jared Peele's father had the same condition and had died from DVT.

23. During the early morning hours of November 10, 2022, Jared Peele was at his mother's house in Roanoke Rapids, North Carolina. He went to the kitchen presumably to get something to drink and fell to the floor. Plaintiff Patricia Peele, his mother, heard him fall. She found her son lying face down on the floor with blood coming out of his nose. Medical personnel were called but Jared could not be revived; he died in his mother's home. He was 39 years old.

5

24. Jared Peele's cause of death was determined by autopsy to be pulmonary embolus.

25. Dr. Cox's misdiagnosis and / or failure to treat Jared Peele at a time when life-saving testing, interventions and treatments would have been successful and were readily available caused Jared Peele's death.

26. From September 27, 2022, until his death, Mr. Peele unnecessarily suffered physical injury, pain and discomfort and ultimately death as a result of the medical care provided by Defendant and its agents and / or employees.

27. The standard of care for someone experiencing these symptoms with a history of DVT would be to send him to the ER or order a STAT chest CT. The hospital emergency department was within walking distance of Dr. Cox's office.

## COUNT I- NEGLIGENCE

28. Plaintiffs incorporated paragraphs 1 through 27 as if fully set forth herein.

29. At all relevant times, Defendant promoted its employees and / or agents, including Dr. Timothy Cox, as sufficiently skilled physicians, surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists, and the like, to capably and competently examine diagnose, and treat Jared Peele according to the stands of care widely held within the State of North Carolina in this medical field.

30. Defendant through its employees and agents had a duty during the medical care of Jared Peele to use such skill, prudence, and diligence, as other members of the medical community commonly possess and exercise.

31. Defendant through its employees and agents had a duty to appropriately examine, diagnose, counsel, care for and treat Jared Peele.

6

32. Defendant owed a duty to ensure the treatment and services provided to Jared Peele were adequate and appropriate in the circumstances.

33. That in the aforesaid procedures, examinations, diagnoses, prescription of medications and drugs, and handling and controlling the care and treatment of Jared Peele, Defendant and its agents, servants, employees, and component governmental departments, negligently failed to possess and to exercise that degree of knowledge and skill ordinarily possessed and exercised by other physicians, surgeons, hospitals, nurses, attendants, and the like, in the same or similar locality under the same or similar circumstances as the said medical providers.

34. That with respect to the duties, responsibilities and liabilities of the Defendant, United States of America, the Defendant negligently, or in some other actionable manner referred to hereinabove, failed to comply with the applicable legal standard of diagnosis, care, and treatment of Jared Peele.

35. That in the aforesaid handling and control of the care and treatment of Jared Peele, Defendant, its agents and / or employees and each of them negligently and tortiously failed to possess or exercise the degree of knowledge or skill that would ordinarily be possessed and exercised by physicians, surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, physical therapists and the like, engaged in said professions in the same locality as Defendant, and each of them is that said Defendant negligently and unlawfully failed to properly and correctly diagnose, render care and treatment to perform surgery on , prescribe and administer medicine and drugs for the condition of Decedent Peele, including but not limited to the following:

   a) The failure to adequately evaluate, diagnose and treat Jared Peele specifically but not limited to September 27, 2022
   b) The failure to adequately evaluate, diagnose and treat Jared Peele specifically but not limited to November 9, 2022

7

c) The failure to perform a review of Jared Peele's past medical condition of DVT; his condition of protein C deficiency, coupled with his family history of the same which had resulted in death:

d) The failure to quantify and qualify the symptoms of Jared Peele as being consistent with DVT or PE, knowing that failure to properly diagnose and / or treat these conditions could result in death;

e) The failure to refer Jared Peele to the hospital next door for any immediate testing for the presence of blood clots in his legs and / or chest:

f) The failure to timely refer Jared Peele to alternative providers with requisite knowledge and experience.

36. The Defendant and its agents and / or employees owed Plaintiffs a duty to use best judgment in the treatment and care of Jared Peele; to use reasonable care and diligence in the application of his/her knowledge and skill in Jared Peele's care. The Defendant and its agents and / or employees failed in this duty and such breach proximately caused the death of Jared Peele.

37. The Defendant and its agents and / or employees owed Plaintiffs a duty to provide health care in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time the health care is rendered to Jared Peele. The Defendant and its agents and / or employees failed in this duty and such breach proximately caused the death of Jared Peele.

38. The Defendant is vicariously liable for the negligence of its agents and / or employees who were operating in the course and scope of their duties under the doctrine of respondeat superior.

39. As a result of the negligence of the Defendant, the United States of America, Jared Peele, sustained pain and suffering, mental anguish, loss of enjoyment of life, loss of future earning, loss of earning capacity and loss of his life. As a result of the negligence

8

of the Defendant the United States of America, the Estate of Jard Peele sues the Defendant to recover for pre-death pain and suffering, mental anguish, and loss of enjoyment of life, loss of future earning, loss of future earning capacity and expenses of the deceased's last illness and burial and any and all other available estate claims and expenses.

40. As a result of the medical negligence of Defendant's personnel and / or employees, Plaintiff Patricia Peele, individually, suffered amongst other injuries sorrow, mental anguish and the loss of society, companionship, comfort, consortium, or protection and loss of care and attention due the wrongful death of her son.

41. As a direct and proximate result of the Defendant's negligence, Decedent Jared Peele suffered injuries and damages, including but not limited to wrongful death, conscious pain and suffering, mental anguish, loss of enjoyment of life, loss of future earning, loss of earning capacity, and expenses prior to his death, and other special and general damages to be proven at trial.

42. The actions and omissions of the Defendant and its agents and / or employees were negligent but also were wanton conduct done with conscious or reckless disregard for the rights and safety of Jared Peele and his family, gross negligence.

### Compliance with Evidence Rule 702 and Civil Procedure Rule 9(J)

43. Plaintiffs incorporated paragraphs 1 through 42 as if fully set forth herein.

44. Plaintiff objects to the pre-filing requirements of Rule 9(j) of the North Carolina Rules of Civil Procedure Rule 9(j) effectively requires Plaintiffs to prove their case before factual discovery is even begun, denies medical malpractice plaintiffs their right to due process of law and equal protection under the law, the right to open courts, and the right to a jury trial, violates the separation of powers, and confers an exclusive emolument on health providers, in violation of the North Carolina Constitution. Rule 9(j) violates Article I, §s 6, 18, 19, 25 and 32 and Article IV, §s 1 and 13 of the North Carolina Constitution.

9

45. Without waiving these objections, counsel for the Plaintiffs provides the following information to comply with the requirements of Rule 9(j): Plaintiff contends that the medical care rendered by Defendant and its agents and / or employees and all medical records pertaining to the alleged negligence that are available to Plaintiff after reasonable inquiry have been reviewed before the filing of this complaint by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the care provided by Defendants did not comply with the applicable standard of care.

46. Plaintiff also contends that this pleading alleges facts establishing negligence and gross negligence through the breach of ordinary duties for which certification of compliance with Rule9(j) of the North Carolina Rules of Civil Procedure is not required.

47. If the Court determines that Plaintiff's 9(j) expert does not meet the requirements of Rule 702(b) or Rule 702(c), Plaintiff will seek to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and Plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

## COUNT II – WRONGFUL DEATH

48. Plaintiffs incorporate paragraphs 1 through 47 as if fully set forth herein.

49. Defendant, through the negligent acts heretofore alleged, is liable for the wrongful death of Mr. Jared Peele, and the Plaintiffs are entitled to recovery for sorrow, mental anguish, and solace, including society, companionship, comfort, guidance, kindly offices and advice.

50. At all times relevant herein, Plaintiff Patricia Peele, individually and as the Administrator of the Estate of Jared Peele is entitled to compensation for the wrongful death of her son, Jared Peele.

51. At all times relevant herein, Plaintiff Patricia Peele, individually, suffered severe and devastating sorrow and mental anguish by witnessing the pain and suffering of her son and finally his death, the effects of the severe illness during the time period in which Mr. Jared Peele was not properly diagnosed, or treated and ultimately his death.

52. The actions and omissions of the Defendant and its agents and / or employees were negligent causing the wrongful death of Jared Peele, but also these acts or omissions were wanton conduct done with conscious or reckless disregard for the rights and safety of Jared Peele and his family, gross negligence.

53. Plaintiffs are entitled to compensation for the wrongful death of Jared Peele.

## COUNT III – SURVIVAL ACTION

54. Plaintiffs incorporate paragraphs 1 through 53 as if fully set forth herein.

55. That Patricia Peele, as duly appointed administrator under the provisions of North Carolina General Statute 28A-6-1; 28A-6-3; 28A-11-1; 36C-2-209 for Jared Peele's estate brings this claim for the conscious pain and suffering for the final days of his life needlessly caused by the negligence of Rural Health Group and its staff, physical injuries, medical expenses, and other damages that the late Mr. Jared Peele experienced from September 22, 2022 until the time of his death on November 10, 2022, as a direct and proximate result of the negligence and breaches of the applicable standard of medical care by Defendant, by and through its doctors, nurses and medical staff.

56. The actions and omissions of the Defendant and its agents and / or employees were negligent causing the pain and suffering of Jared Peele prior to his death, but also these acts or omissions were wanton conduct done with conscious or reckless disregard for the rights and safety of Jared Peele and his family, gross negligence.

## COUNT IV - NEGLIGENCE INFLICTION OF SEVERE EMOTIONAL DISTRESS

57. Plaintiffs incorporate paragraphs 1 through 56 as if fully set forth herein.

58. Plaintiff Patricia Peele, individually, suffered severe emotional distress.

59. The Defendant, its agent and /or employees were under a duty to use ordinary care to protect Plaintiff Patricia Peele, individually, and others from injury and damage.

60. The Defendant, its agent and /or employees breached this duty and as a proximate cause of that breach, Plaintiff Patricia Peele individually, was injured.

61. Plaintiff Patricia Peele individually, suffered severe emotional distress, a type of severe and disabling emotional or mental condition which is generally recognized and was diagnosed by professionals trained to do so.

62. The Defendant, its agent and /or employees' negligence was a proximate cause of the Plaintiff Patricia Peele, individually, severe emotional distress.

63. The actions and omissions of the Defendant and its agents and / or employees were negligent causing the negligent infliction of emotional distress to Plaintiff Patricia Peel, individually, but also these acts or omissions were wanton conduct done with conscious or reckless disregard for the rights and safety of Jared Peele and his family, gross negligence.

## COUNT V – LOSS OF CONSORTIUM

64. Plaintiffs incorporate paragraphs 1 through 63 as if fully set forth herein.

65. The Defendant, its agent and /or employees negligent care of Jared Peele proximately caused Plaintiff Patricia Peele, individually, to lose consortium of her son, Jared Peele.

12

66. Plaintiff Patrica Peele, individually, is the mother of Jared Peele, the decedent. At the time of his death Jared Peele lived with his mother.

67. The relationship that Plaintiff Patricia Peele, individually, had with her son Jared Peele consisted of tangible services provided by Jared Peele to his mother, Plaintiff Patricia Peele and intangible benefits to his mother Plaintiff Patricia Peele received from the continued existence of Jared Peele, such benefits include but are not limited to attention, guidance, care, protection, companionship, cooperation, affection, and love.

68. The Defendant, its agent and /or employees' breach of the duty owed to Plaintiffs negligent care of Jared Peele proximately caused Plaintiff Patricia Peele, individually, to lose consortium of her son, Jared Peele.

69. The actions and omissions of the Defendant and its agents and / or employees were negligent causing the lose consortium of Plaintiff Patricia Peele, individually, but also these acts or omissions were wanton conduct done with conscious or reckless disregard for the rights and safety of Jared Peele and his family, gross negligence.

## REQUEST FOR ADVISORY JURY

Pursuant to Rule 39(c) of the Federal Rules of Civil Procedure, "[i]n all actions not triable by right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury." Fed R. Civ. P.39(c). Plaintiffs hereby respectfully request an advisory jury.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully demand judgment in their favor on all Counts, and to:

A. Award Plaintiffs' compensatory, consequential and incidental damages in an amount to be proven at trial, but not less than $25,000,000.00.

B. Award Plaintiffs all damages to which they are entitled under North Carolina General Statute § 28A-18-2, and all other applicable state and federal laws:

C. Award Plaintiffs pursuant to § 90-21.19 (b) an amount for noneconomic damages that exceeds that statutory limit, in that, The Estate of Jared Peele suffered disfigurement, loss

13

of use of part of the body, permanent injury or death and that the actions and / or omissions of the Defendant and / or its agents or employees were committed in reckless disregard of the rights of others, grossly negligent, fraudulent, intentional or with malice.

D. Award Plaintiffs their costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988;

E. Award pre-post-judgment interest on any award as permitted by law; and

F. Award such other relief that this Court deems just and proper.

DATED: November 5th, 2024.

Respectfully Submitted,

James E. Rogers (NCSB #14290)
James E. Rogers, PA
Post Office Box 25198
Durham, North Carolina 27701
james@jameserogers.com

14